# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 1:17cr56-HSO-JCG-2 |
| | § | |
| ANDREA REENE OPOKU | § | |

## ORDER DENYING WITHOUT PREJUDICE DEFENDANT ANDREA REENE OPOKU'S MOTION [384] FOR COMPASSIONATE RELEASE

**BEFORE THE COURT** is Defendant Andrea Reene Opoku's Motion [384] for Compassionate Release. For the reasons that follow, the Motion [384] should be denied without prejudice.

## I. BACKGROUND

Pursuant to a Plea Agreement with the Government, on October 18, 2017, Defendant Andrea Reene Opoku ("Defendant" or "Opoku") pleaded guilty to Count 1 of the Indictment in this case, which charged that Opoku and her codefendants

> did knowingly and intentionally conspire with each other and others both known and unknown to the Grand Jury, to distribute and dispense controlled substances outside the scope of professional practice, to wit: Oxycodone, a Schedule II narcotic drug controlled substance, Hydrocodone, a Schedule II narcotic drug controlled substance, Amphetamine/Dextroamphetamine, a Schedule II narcotic drug controlled substance, and Alprazolam and Klonopin, both Schedule IV non-narcotic controlled substances, as prohibited by Section 841(a)(1), Title 21, United States Code.
>
> All in violation of Section 846, Title 21, United States Code.

Indictment [3] at 1-2.

On March 5, 2018, the Court sentenced Opoku to a 92-month term of imprisonment followed by 3 years of supervised release. Min. Entry, March 5, 2018. Opoku is presently incarcerated at Coleman Low, Federal Correctional Institution ("FCI Coleman") in Sumterville, Florida, and her anticipated release date is November 6, 2024. *See* Mot. [384] at 4; Reply [396] at 2; Def. Ex. 2, Summary Reentry Plan [396-2] at 1. Opoku filed the present Motion [384] for Compassionate Release on April 22, 2020, Mot. [384] at 1, asking that the Court order her early release or allow her to serve the remainder of her sentence on home confinement, *id.* at 7; Reply [396] at 20.

The Government opposes Opoku's Motion, arguing that it should be denied without prejudice because Opoku has not yet exhausted administrative remedies. *See* Resp. [387] at 6-9 (citing 18 U.S.C. § 3582(c)(1)(A)). Alternatively, if the Court reaches the merits of the Motion, the Government asserts that Opoku has not shown either of the two factors which are required to entitle her to compassionate release. *See id.* at 10-13.

Opoku has filed a Reply [396] arguing that she has exhausted her administrative remedies under § 3582(c)(1)(A)(i). *See* Reply [396] at 3-4. She maintains that she filed a request for home confinement with the Warden of FCI Coleman, which was denied on May 12, 2020.[1] Def. Ex. 1, Request Denial [396-1] at 1. At the time Opoku's Reply was filed, 30 days had passed since the denial of her request. *See id.* Opoku reasons that "[t]hirty days has elapsed since her request

---

[1] The record does not reflect the date Opoku submitted her request.

has been denied, therefore Ms. Opoku has exhausted her administrative remedies as required." Reply [396] at 3-4. Opoku contends that the COVID-19 pandemic warrants releasing her to home confinement based upon the "extraordinary and compelling reasons" language of § 3582(c)(1)(A). *Id*. at 15-17. She cites "multiple medical conditions that put her at higher risk of serious illness or death should she become infected with COVID-19," including hypertension and obesity, as well as the spread of COVID-19 at FCI Coleman. *See id*. at 15-17. Opoku claims that she has a suitable home environment to which to return upon release, and that she has been a model prisoner, completing over 20 education courses while incarcerated. *Id*. at 18.

## II. DISCUSSION

18 U.S.C. § 3582(b) provides that a judgment of conviction constitutes a final judgment which can be modified only under limited circumstances set forth at 18 U.S.C. § 3582(c). At issue in this case is a requested modification under § 3582(c)(1)(A)(i), which states that:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in

3

>> section 3553(a) to the extent that they are applicable, if it finds that--
>> (i)   extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

Some courts have interpreted the phrase "lapse of 30 days from the receipt of such a request by the warden" to mean, as Opoku argues, that the exhaustion requirement is satisfied when 30 days have passed from the date the warden receives a request from a defendant that the Bureau of Prisons ("BOP") file a compassionate release motion on the defendant's behalf, even where the BOP has responded to or taken action on the request. *United States v. Charlie Lee Martin*, No. 3:16-cr-70-DPJ-LRA, 2020 WL 3065302, at *2 (S.D. Miss. June 9, 2020) (quoting *United States v. Ng Lap Seng*, No. 15-CR-706-VSB, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020)). Other courts interpret this language as somewhat akin to a futility requirement, meaning exhaustion is only satisfied when 30 days have passed from the date the warden receives the request *and* BOP has not taken any action on it. *Id.* (quoting *Ng Lap Seng*, 2020 WL 2301202, at *6).

The rationale behind the latter view is essentially that the former interpretation "would substantially undermine one of the goals of the exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes—'as it [would] allow[ ] a defendant to come to court before the agency has rendered a final decision' and foreclose higher-level BOP review of a request." *Id.* (quoting *Ng Lap Seng*, 2020 WL 2301202, at *6). There is also a risk that the former interpretation would "render the statute's provision regarding full

4

exhaustion of administrative remedies meaningless, as defendants like [Opoku] would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." *Id.* (quoting *Ng Lap Seng*, 2020 WL 2301202, at *6).

The Court agrees with those courts interpreting the "lapse of 30 days" language as applying only where the BOP has failed to respond to a compassionate release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then she must fully exhaust administrative remedies before the Court may consider a motion to modify her sentence under the statute. *See United States v. Allen*, 1:15-cr-36-HSO-JCG-1, ECF 70 (S.D. Miss. June 12, 2020); *United States v. Martin*, 3:16-cr-79-DPJ-LRA, 2020 WL 3065302, at *3 (S.D. Miss. June 9, 2020). Because Opoku has applied to BOP for relief, and BOP has formally responded to Defendant's request (and denied it), Opoku must fully exhaust her remedies under the first exhaustion method set forth in the statute.

Opoku is thus subject to the four-step BOP grievance process as described in 28 C.F.R. §§ 542.13 through 542.15. *Petzold v. Rostollan*, 946 F.3d 242, 254 (5th Cir. 2019); *see also* 28 C.F.R. § 542.10 (explaining that the Administrative Remedy Program outlined in 28 C.F.R. §§ 542.10 through 542.19 applies to all people incarcerated in institutions operated by BOP). In order to "fully exhaust all administrative remedies," the regulations provide as follows:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's

5

> response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response . . . Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15(a).

The timing requirements for the BOP grievance process are described in 28 C.F.R. § 542.18. *Spurlock v. Jones*, 709 F. App'x 293, 294 (5th Cir. 2018). Under 28 C.F.R. § 542.18, a response is required by the Warden within 20 calendar days of an inmate's filing of the initial request; by the Regional Director within 30 calendar days of an inmate's filing of a BP-10; and by the General Counsel within 40 calendar days of an inmate's filing of a BP-11. 28 C.F.R. § 542.18.

The record reflects that Opoku's initial request to the Warden of FCI Coleman was denied on May 12, 2020. Def. Ex. 1, Request Denial [396-1] at 1. There is no indication that Opoku filed an appeal of the Warden's response to the Regional Director on a BP-10 form within 30 calendar days of receiving this denial. She has also not provided any evidence showing that the Regional Director has responded to any such appeal. Even if she had filed an appeal and the Regional Director had responded, in order to fully exhaust her remedies, Opoku would need to file an appeal to the General Counsel within 30 calendar days of any denial by the Regional Director, and then await the General Counsel's response. *See* 28 C.F.R. § 542.18. There is no evidence that Opoku has appealed the Warden's denial, received a response from the Regional Director, appealed any such response to the General Counsel, or that the General Counsel has responded. It is clear from

6

the record that Opoku has not submitted sufficient evidence to demonstrate that she has taken all of the required steps to fully exhaust her administrative remedies.

18 U.S.C. § 3582(c)(1)(A)(i) specifically mandates exhaustion and does not provide any exceptions to the exhaustion requirement. The statute states that "the court may not" modify Opoku's sentence until she fully exhausts her administrative remedies, and nothing in the text of § 3582(c) confers upon the Court the authority to waive that requirement. 18 U.S.C. § 3582(c).

District courts in this circuit are split on whether these procedural requirements are jurisdictional and thus not amenable to waiver or other exceptions. *See, e.g., United States v. Echols*, No. 3:15-CR-125-1, 2020 WL 2309255, at *2 (N.D. Miss. May 8, 2020) (comparing cases). However, the Fifth Circuit has recognized that a "district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582." *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010).[2] As another judge of this Court has recently recognized, whether the exhaustion requirement of § 3582(c)(1)(A)(i) is jurisdictional "is debatable but irrelevant in the present case because the Government has not waived exhaustion." *United States v. Gates*, No. 3:17-CR-150-DPJ-FKB, 2020 U.S. Dist. LEXIS 88756, at *6 n.3 (S.D. Miss. May 20, 2020).

---

[2] *See also Valentine v. Collier*, 956 F.3d 797, 807 n.3 (5th Cir. 2020) (C.J. Higginson, concurring) (noting that unlike the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), § 3582(c)(1)(A) does not limit the exhaustion requirement to "available" remedies, and further noting that the "availability" caveat in the PLRA is that statute's "built-in exception to the exhaustion requirement") (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016)).

The Government seeks denial of Opoku's Motion for her failure to exhaust under § 3582(c)(1)(A)(i). Even if the exhaustion requirement of § 3582(c)(1)(A)(i) is not jurisdictional, waiver is inapplicable here because the Government has invoked the requirement, and the Court is not otherwise persuaded that it should consider Opoku's Motion prior to her completion of the mandatory, statutory exhaustion requirement. Because the Court cannot and will not consider Opoku's request to reduce her sentence until she has complied with the exhaustion requirements of § 3582(c)(1)(A), the Court must deny the instant Motion without prejudice for failure to comply with the mandatory exhaustion requirements.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Andrea Reene Opoku's Motion [384] for Compassionate Release is **DENIED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**SO ORDERED AND ADJUDGED**, this the 19th day of June, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE